UNITED STEELWORKERS OF AMERICA : CIVIL ACTION
AFL-CIO/CLC and LEWIS GRIFFIN, :
GEORGE HEMMERT, GEORGE KEDDIE :
and JANICE SCOTT : NO. 05-CV-0039
:
        vs. :
:
ROHM AND HAAS COMPANY and :
ROHM AND HAAS COMPANY HEALTH :
AND WELFARE PLAN :

**MEMORANDUM AND ORDER**

JOYNER, J.                                    **January 28, 2010**

      This matter has once again been brought before the Court for
disposition of the parties' cross-motions for summary judgment on
the claims of Plaintiffs Lewis Griffin and George Hemmert.  For
the reasons outlined in the pages that follow, both of the
parties' motions shall be granted in part and denied in part.

## History of the Case

    According to the allegations contained in the First Amended
Complaint[1], Defendant Rohm and Haas Company provided various

---

[1]  Prior to the filing of the First Amended Complaint in June, 2008,
the parties had filed cross-motions for summary judgment on the original
complaint, filed in January, 2005.  The original complaint contained two
counts – the first seeking to compel Rohm and Haas to arbitrate the denial of
the individual plaintiffs' claims for disability retirement or long term
disability benefits and the second seeking relief under Section 502 of the
Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. §1132(a)(1)(B)
and (a)(3).  The parties agreed to litigate the two counts separately, with
discovery on Count I to proceed first.  The Scheduling Order of September 15,
2005 further dictated that "[s]hould the Court enter judgment for Plaintiff
United Steelworkers of America AFL-CIO/CLC on Count I as a result of
dispositive motions or a trial, Plaintiffs will withdraw with prejudice Count

types of disability benefits to its employees pursuant to
bargained-for agreements negotiated by the plaintiff United
Steelworkers of America, AFL-CIO/CLC on behalf of its members.
These disability benefits were provided by and through the
Defendant Rohm and Haas Company Health and Welfare Plan, as it
was amended from time to time.  The individual plaintiffs are all
members of the plaintiff Union who were employed at various times
by Defendant Rohm and Haas Company, who became disabled from
working and who made claims for both short-term and long-term
disability benefits and/or for the Disability Retirement
Allowance ("DRA") under the defendant plan.

In the cases of moving Plaintiffs Lewis Griffin and George
Hemmert, both applied for and received short and long term
disability benefits and social security disability income
benefits ("SSDI"), but were initially denied benefits under the
DRA.  Although Mr. Griffin's application for DRA was eventually
approved in July 2005, Rohm and Haas took his SSDI income as an
offset.  After application of this offset, Mr. Griffin's DRA
benefit did not exceed his current LTD monthly benefit and he
therefore did not receive the DRA.  Mr. Griffin seeks DRA

_____

II," and "[s]hould the Court enter judgment for Defendant on Count I as a
result of dispositive motions or a trial, the Court will then enter a separate
Scheduling Order for discovery and dispositive motions for Count II."  See, ¶s
3 and 4, Scheduling Order of September 15, 2005; USW v. Rohm and Haas, 2006
U.S. Dist. LEXIS 66480, *4, n.1 (E.D. Pa. Sept. 14, 2006).  Although we
initially granted the plaintiffs' motion for summary judgment on Count I, that
decision was reversed by the Third Circuit and the case remanded.  Thereafter,
the plaintiffs sought leave and we granted Plaintiffs permission to file the
First Amended Complaint on June 30, 2008.

benefits, retroactive to at least July 2004 without an offset for SSDI income. Mr. Hemmert's DRA application was never approved and although he received LTD benefits through September 2007, Rohm and Haas terminated those benefits at that time on the grounds that Plaintiff had failed to provide evidence of ongoing disability. Mr. Hemmert seeks reinstatement of his LTD benefits with an opportunity to apply for the DRA or, alternatively, payment of the DRA benefit retroactive to August 2003 without an SSDI offset. All of the plaintiffs[2] submit that, pursuant to §502(a)(1)(B) of the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. §1132(a)(1)(B), they are entitled to recover benefits due and to enforce their rights under the Rohm and Haas Company Health and Welfare Plan and seek: (1) a declaration that the defendants have violated their obligations and failed to administer benefits due under the Plan and the labor agreements pursuant to which the Plan was negotiated; (2) a Court Order directing Rohm and Haas to perform its contractual and statutory duties and (3) an award of counsel fees and costs to Plaintiffs and their attorneys.

By way of the competing motions now before us, the parties each contend that no genuine material issues of fact exist and

---

[2] Although the instant motion seeks entry of summary judgment only as to the claims of Plaintiffs Griffin and Hemmert, the First Amended Complaint avers that the remaining two plaintiffs, Janice Scott and George Keddie, continue to receive LTD benefits although their requests for the DRA benefit were denied. Those plaintiffs likewise claim entitlement to the DRA without an SSDI offset.

that they are entitled to the entry of judgment in their favor as a matter of law.

## Standards Applicable to Resolving Rule 56 Motions

Summary judgment is merited "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As to materiality, the substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Summary judgment is precluded when there is a dispute over facts which might affect the outcome of the suit under the governing law. Id. Once the moving party has met its initial burden of showing that no genuine issue of material fact exists, the nonmoving party cannot rely on conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact. Pastore v. Bell Telephone Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994). Instead, the nonmoving party "must make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by the depositions and admissions on file." Harter v. GAF Corp., 967 F. 2d 846, 852 (3d Cir. 1992).

## Discussion

Congress enacted ERISA to "protect ... the interests of

participants in employee benefit plans and their beneficiaries"

by setting out substantive regulatory requirements for employee

benefit plans[3] and to "provide for appropriate remedies,

sanctions, and ready access to the Federal courts." Aetna

Health, Inc. v. Davila, 542 U.S. 200, 208, 124 S. Ct. 2488, 2495,

159 L. Ed. 2d 312 (2004), quoting 29 U.S.C. §1001.  The purpose

of ERISA is to provide a uniform regulatory regime over employee

benefit plans.  Id.

Section 502(a)(1)(B) of ERISA authorizes the institution of

a civil action by an aggrieved plan participant by stating as

follows in relevant part:

**(a) Persons empowered to bring a civil action**

A civil action may be brought -

**(1)** by a participant or beneficiary -

....

> **(B)** to recover benefits due to him under the terms
> of his plan, to enforce his rights under the terms
> of the plan, or to clarify his rights to future
> benefits under the terms of the plan;

29 U.S.C. §1132(a)(1)(B).

Under ERISA, a plan should determine benefits eligibility by

---

[3]  An employee welfare benefit plan is defined as "any plan, fund, or
program which was ... established or maintained by an employer or by an
employee organization, or by both, to the extent that such plan, fund, or
program was established or is maintained for the purpose of providing for its
participants or their beneficiaries, through the purchase of insurance or
otherwise, (A) medical, surgical or hospital care or benefits or benefits in
the event of sickness, accident, disability, death or unemployment..." Ford
v. Unum Life Insurance Co. of America, 2009 U.S. App. LEXIS 24513 at *5, fn.1
(3d Cir. Nov. 9, 2009); 29 U.S.C. §1002(1).

providing a full and fair review of all evidence relating to an alleged disability. <u>Michaels v. The Equitable Life Assurance Society of the U.S.</u>, Civ. A. No. 04-CV-3250, 2005 U.S. Dist. LEXIS 12238 at *5 (E. D. Pa. June 20, 2005), citing <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 102, 109 S. Ct. 948, 950, 103 L. Ed. 2d 80 (1989). Although the ERISA statute itself does not set out the appropriate standard of review for actions under §1132(a)(1)(B) challenging benefit eligibility determinations, the Supreme Court has set forth four relevant principles of review of benefit determinations by fiduciaries or plan administrators:

> (1) In "determining the appropriate standard of review, a court should be guided by principles of trust law;" in doing so it should analogize a plan administrator to the trustee of a common-law trust and it should consider a benefit determination to be a fiduciary act in which the administrator owes a special duty of loyalty to the plan beneficiaries;

> (2) principles of trust law require courts to review a denial of plan benefits under a *de novo* standard unless the plan provides to the contrary;

> (3) where the plan provides to the contrary by granting the administrator or fiduciary discretionary authority to determine eligibility for benefits, trust principles make a deferential standard of review appropriate; and

> (4) if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.

<u>Metropolitan Life Insurance Co. v. Glenn</u>, ___ U.S. ___ , 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008), citing <u>Firestone</u>, 489 U.S. at

111-113, 115; <u>Serbanic v. Harleysville Life Insurance Co.</u>, Nos. 08-1059, 08-1157, 2009 U.S. App. LEXIS 9302, *5, 325 Fed. Appx. 86, 89 (3d Cir. April 30, 2009).

Hence, a denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. <u>Young v. American International Life Assurance Co. of N.Y.</u>, No. 08-4127, 2009 U.S. App. LEXIS 27788 at * (3d Cir. Dec. 18, 2009); <u>Doroshow v. Hartford Life and Accident Insurance Co.</u>, 574 F. 3d 230, 233 (3d Cir. 2009), both citing <u>Firestone</u>, <u>supra</u>. When the administrator has discretionary authority to determine eligibility for benefits, the decision must be reviewed under an arbitrary and capricious standard.[4] <u>Id</u>., citing <u>Id</u>. And, as the Supreme Court recently recognized in <u>Glenn</u>, "[o]ften the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket," and this "creates the kind of conflict of interest" which "must be weighed as a factor in determining whether there is an abuse of discretion." <u>Glenn</u>, 128 S. Ct. at 2346, 2348, quoting

---

[4] As observed in <u>Estate of Schwing v. The Lilly Health Plan</u>, 562 F.3d 522, 525, n.2 (3d Cir. 2009), "... at least in the ERISA context," the "arbitrary and capricious standard of review" and the "abuse of discretion" standard are "practically identical," citing <u>Abnathya v. Hoffman-La Roche, Inc.</u>, 2 F.3d 40, 45, n.4 (3d Cir. 1993).

<u>Firestone</u>, <u>supra</u>. Therefore when judges review the lawfulness of benefit denials, it is appropriate to take account of several different, often case-specific, considerations of which a conflict of interest is one and thereby reach a result by weighing all together. <u>Glenn</u>, 128 S. Ct. at 2351.

In this case, the plan documents clearly state that Defendant Rohm and Haas Company is the "Sponsor" of the Defendant Health and Welfare Plan and the "Plan Administrator" for the disability benefits portion(s) of the plan within the meaning of ERISA. (Joint Appx., D2-D6, D106; 29 U.S.C. §1002). Under Article V of the Plan, the Administrator is charged with establishing "administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with the governing Plan documents and that, where appropriate, the Plan provisions have been applied consistently with respect to similarly situated Claimants." Article 6.2, in turn provides in pertinent part:

> The Rohm and Haas Benefits Administrative Committee shall have the exclusive power and authority in its sole and absolute discretion to control and manage the operation and administration of the Plan and shall have all powers necessary to accomplish these purposes. The responsibility and authority of the Rohm and Haas Benefits Administrative Committee shall include, but shall not be limited to, the following duties and powers: (a) to construe and interpret the Plan and decide all questions of eligibility and participation; ...

(Joint Appx., D22). And, Article 6.3 further reads in relevant part:

The Rohm and Haas Benefits Administrative Committee shall
have the sole discretion to interpret the Plan and decide
any matters arising hereunder and may adopt such rules and
procedures as it deemed necessary, desirable or appropriate
in the administration of the Plan, provided that such
determinations do not conflict with the Plan or applicable
law. ...

Any final determination by the Rohm and Haas Benefits
Administrative Committee shall be binding on all parties.
If challenged in court, such determination shall not be
subject to <u>de novo</u> review and shall not be overturned unless
proven to be arbitrary and capricious upon the evidence
presented to the Rohm and Haas Benefits Administrative
Committee at the time of its determination.

(Joint Appx., D22-D23).  In addition, the summary plan

description states in pertinent part at page 44 that "[a]s the

Plan Administrator, Rohm and Haas is responsible for operating

the benefit plans and resolving any questions according to the

plan documents. ..."   Thus, as the preceding language clearly

indicates, the plan administrator here has discretionary

authority to make benefits determinations and as the Company

itself is the plan administrator, it is in fact operating under a

conflict of interest.  We shall therefore apply the arbitrary and

capricious/abuse of discretion standard of review[5], taking into

---

[5]   Under the arbitrary and capricious standard, a plan administrator's
decision will be overturned only if it is clearly not supported by the
evidence in the record or the administrator has failed to comply with the
procedures required by the plan.  A court is not free to substitute its own
judgment for that of the defendants in determining eligibility for plan
benefits.  <u>Taylor v. Union Security Insurance Co.</u>, No. 08-3692, 332 Fed. Appx.
759, 762, 2009 U.S. App. LEXIS 11452 at *8 (3d Cir. May 28, 2009); <u>Smathers v.
Multi-Tool, Inc.</u>, 298 F.3d 191, 199-200 (3d Cir. 2002).  Furthermore, whether
a claim decision is arbitrary and capricious requires a determination whether
there was a reasonable basis for the administrator's decision, based upon the
facts as known to the administrator at the time the decision was made.
<u>Smathers</u>, <u>supra</u>; <u>Sweeney v. Standard Ins. Co.</u>, 276 F. Supp. 2d 388, 393 (E.D.
Pa. 2003).

consideration the afore-noted conflict of interest.

As noted, both of the moving plaintiffs in this case are seeking to receive the DRA benefit without an offset for SSDI. Mr. Hemmert is also first seeking to have his LTD benefits restored. Both argue that by applying the offset and, in Mr. Hemmert's case terminating his LTD, the defendants have violated their obligations and failed to administer benefits due under the Plan and the labor agreements pursuant to which the Plan was negotiated. By their motion, Defendants make the contrary argument: that they properly exercised their discretion in construing the plan documents to provide for the application of the "other income/SSDI" offset to the calculation of the DRA benefit and in terminating Plaintiff Hemmert's LTD benefit because he failed to comply with the requirement to provide evidence of continuing disability.

A. *Calculation of the DRA Benefit*

In reviewing the copies of the Plan and the Summary Plan Description provided, we first observe that Rohm and Haas' Disability Income Program is described as having three components: (1) Accident and Sickness benefits, which cover up to 26 weeks of disability; (2) the Extended Disability Allowance, which takes over for the next 26 weeks; and (3) the Long Term Disability Allowance ("LTD"), which can continue paying benefits should the disability last more than one year. The length of

time that a disabled employee can receive LTD varies, depending upon his or her length of service to the company. (Jt. Appx., D64, D66-D68). Finally, while it is specifically "not part of the Pension Plan," an employee may receive the Disability Retirement Allowance instead of LTD if his disability is both total and permanent, he has five or more years of service and if the DRA would be greater than LTD. (Jt. Appx., D69).

There are a number of requirements that "apply to all three parts of the Disability Income Program," pursuant to which disability income benefits may be received if an illness or injury prevents an eligible employee from working at either his regular job or any other job for which he is qualified. (D64). These requirements mandate that an eligible employee:

1) Be in active treatment with a doctor or dentist approved by the Company.

2) Follow the treatment prescribed by the doctor or dentist.

3) Agree to be examined periodically, either by his own doctor or one appointed by the Company so that his disability can be verified. If the employee's doctor and the Company's doctor disagree about the extent of disability, a third doctor may be asked to render an opinion.

4) Accept any alternate job assignment for which he may be qualified.

5) Not work for another employer while receiving disability benefits from Rohm and Haas.

(Jt. Appx., D64-D65). If an employee refuses to provide proof of ongoing disability, he may be disqualified from receiving

benefits.    (Jt. Appx., D65).  Beginning on page 3 of the 47-page

Summary Plan Description outlining the disability income,

survivor benefits, layoff allowance and pension benefits portion

of the Plan, appears the following language:

**HOW BENEFITS ARE FIGURED**

If you become disabled, you may qualify for disability
benefits from more than one source.  The Disability Income
Program takes other sources of income into account when your
Company-provided benefit is calculated.

The Disability Income Program is designed to make up the
*difference* between any other disability benefits you may
receive and the percentage of pay assured by various parts
of the program.  If you are also receiving benefits under
another Company program covering the time you are disabled,
those benefits will also be taken into account.  If you
don't qualify for income from any other source, your entire
benefit will come from the Company's program.

**Other sources of Disability Income**

Other potential sources of disability income may include:

* Social Security

* Workers' Compensation

* Other government disability payments

* No-fault auto insurance

* Disability payments from a third party, including awards
from a lawsuit.

If you are eligible for payments from any of these sources,
you should apply for them.  Your Company benefit will be
figured as though you are receiving any other income to
which you are entitled, even if you don't apply.

(Jt. Appx. D65).

This language appears in the pages that immediately precede

12

the more detailed discussions and descriptions of the Accident
and Sickness Benefits, The Extended Disability Allowance, the
Long Term Disability Allowance and the Disability Retirement
Allowance.  Included in the descriptions of the Extended
Disability Allowance and the Long Term Disability Allowance is
the following sentence: "Keep in mind that this allowance
includes any other benefits you may be entitled to receive from
other sources, as explained on page 3."  (Jt. Appx., D68).  That
sentence is absent from the description of the Accident and
Sickness Benefit[6] and the Disability Retirement Allowance. (Jt.
Appx., D66-D67, D69).  However, at page 9 of the Summary Plan
Description, which follows the discussion of the three types of
disability benefits and the DRA, appears this additional
admonition:

> **OTHER SOURCES OF DISABILITY INCOME**
> Remember that disability income from the following sources
> may be taken into account when your benefits from the
> Disability Income Program are calculated (See page 3 for
> details.)
>
> **TRAVEL ACCIDENT PLAN ...**
>
> **SOCIAL SECURITY ...**
>
> **STATE DISABILITY BENEFITS ...**
>
> **WORKERS' COMPENSATION ...**

(Jt. Appx., D71).

---

[6]  This is not surprising given that the Accident and Sickness Benefit
is a short term, temporary benefit designed to provide income to employees who
are temporarily out of work for 26 weeks or less due to injury or illness.

Thus, while the Plan documents are not entirely clear that the other income offset is to be applied in calculating the DRA, we find that they can be read either way. In as much as this evinces an ambiguity, we must take the additional step and analyze whether the plan administrator's interpretation of the document is reasonable. Donachy v. Motion Control Industries, No. 08-3919, 332 Fed. Appx. 721, 724, 2009 U.S. App. LEXIS 12439 (3d Cir. June 4, 2009). In so doing, we may look to extrinsic evidence and Plaintiffs submit that we should consider evidence of the parties' understanding of the terms, past practices and whether there is a pattern of inconsistent benefit decisions by the defendants. Bill Gray Enterprises, Inc. Employee Health & Welfare Plan v. Gourley, 248 F.3d 206, 218 (3d Cir. 2001); Smirth v. Hartford Insurance Group, 6 F.3d 131, 138-139 (3d Cir. 1993).

Applying the arbitrary and capricious standard and considering the monetary conflict of interest noted above, we can not find an abuse of discretion here with respect to the decision to apply an offset in calculating the DRA. Indeed it appears that the defendants based their decision to apply the Social Security disability income offset in calculating Mr. Griffin's DRA on the Summary Plan Description sub-section (at page 3 of the SPD) entitled "*How Benefits Are Figured*" which stated "The Disability Income Program is designed to make up the *difference*

14

between any other disability benefits you may receive and the percentage of pay assured by various parts of the program." Defendants believed that this applied to *all* disability income benefits. Although Plaintiffs have submitted numerous affidavits reflecting that, in the case of several other, similarly-situated employees, the SSI offset was not applied in calculating the DRA, the defendants have provided an affidavit from Cynthia Mazer, Rohm and Haas' Manager of Health and Welfare Programs.[7] Ms. Mazer confirms that "[b]efore mid-2005, there were some mistakes in calculating medically-approved DRA benefits without Social Security Disability Income ("SSDI") offsets," and that the four affiants whose affidavits have been produced by Plaintiffs "received the DRA benefit without the SSDI offset by mistake." ... Since detection of these calculation mistakes in mid-2005, neither the Plan nor Rohm and Haas paid any newly-approved DRA applicant a DRA benefit without a SSDI offset." (Mazer Aff., ¶7). There is no other evidence of record to refute Ms. Mazer's testimony and thus we find that there is no dispute but that the miscalculation occurred in only these four cases. We note that the Third Circuit has held that "arguments regarding similarly situated employees 'should be given minimal, if any, weight' in claims determinations, because the fact that administrators may

---

[7]    Ms. Mazer was employed in this capacity by the Rohm and Haas Company from September 18, 2000 until March 31, 2009, when Rohm and Haas was acquired by the Dow Chemical Company.  She continues to work in this same position for Dow Chemical.  (Affidavit of Cynthia Mazer, ¶1).

have, in the past, erroneously granted benefits under an ERISA plan does not mean that they are bound 'in a straightjacket requiring them to do so forever.'" Delso v. Trustees of the Retirement Plan For Hourly Employees of Merck & Co., No. 08-3474, 336 Fed. Appx. 214, 217, fn.2, 2009 U.S. App. LEXIS 15011 (3d Cir. July 7, 2009), quoting Vitale v. Latrobe Area Hospital, 420 F.3d 278, 286 (3d Cir. 2005). Thus, the trustees' interpretation should be upheld even if the court disagrees with it, so long as the interpretation is rationally related to a valid plan purpose and is not contrary to the plain language of the plan. Pacconi v. Trustees of the United Mine Workers of America, 264 Fed. Appx. 216, 218, 2008 U.S. App. LEXIS 3035 (3d Cir. Feb. 11, 2008). Alternatively, a plan administrator's decision may be overturned if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan. See, Taylor, Smathers, and Sweeney, all supra.

Here, we cannot find that the defendants' interpretation is either unreasonable or not rationally related to a valid purpose of the plan. To the contrary, we find the administrator's reading of the above-quoted plan language eminently reasonable given the numerous references and reminders throughout the plan documents to beneficiaries that they should apply for any and all other disability benefits that may be available to them as the

amount of their benefits under the plan will be determined as
though they were receiving such available alternative benefits.
See Also, McElroy v. Smithkline Beecham Health & Welfare Benefits
Trust Plan, 340 F.3d 139, 142-143 (3d Cir. 2003)(holding that
"[b]ecause RRB [Railroad Retirement Board Disability benefits]
are paid by a 'government' agency, ... the plan administrator's
reading [offsetting RRB benefits from insurer-paid disability
benefits] is not 'without reason, unsupported by the evidence or
erroneous as a matter of law.'").  Therefore, despite the slight
ambiguity and the evidence that the offset was not applied in
absolutely all cases, we find that the language of the plan
documents amply supports the defendants' reading of it.  We thus
conclude that the decision to apply the offset in calculating
these plaintiffs' DRA benefits is a reasonable one.  Accordingly,
we shall grant the Defendants' Motion for Summary Judgment in
part and deny in part the Plaintiffs' Motion for Summary Judgment
with respect to Mr. Griffin's claim and that part of Mr.
Hemmert's claim which seeks to recover the DRA benefit *sans* the
offset for Social Security Disability Income.

    *B.*    *Reinstatement of Plaintiff Hemmert's LTD Benefits*

Turning next to that part of Mr. Hemmert's claim seeking
reinstatement of his LTD benefit, we are again bound to consider
whether the plan administrator's decision to terminate that
benefit is clearly supported by the evidence in the record or

whether the administrator has failed to comply with the procedures required by the plan.  Again, a court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.  Taylor v. Union Security Insurance Co., No. 08-3692, 332 Fed. Appx. 759, 762, 2009 U.S. App. LEXIS 11452 at *8 (3d Cir. May 28, 2009); Smathers v. Multi-Tool, Inc., 298 F.3d 191, 199-200 (3d Cir. 2002).

The procedures for filing claims for benefits and appealing the denial of claims are set forth in Article V of the plan. Article 5.1.2(g) provides as follows in relevant part:

> In the case of a claim for Disability Benefits, the Claims Administrator shall notify the Claimant of the Claims Administrator's adverse Benefit Determination within a reasonable period of time, but not later than 45 days after receipt of the claim by the Plan.  This period may be extended for up to 30 days, provided that the Claims Administrator both determines that such an extension is necessary due to matters beyond the Plan's control and notifies the Claimant, prior to the expiration of the initial 45-day period, of the circumstances requiring the extension of time and the date by which the Claims Administrator expects to render a decision. ... In the case of any extension under this Section 5.1.2(g) the notice of extension shall specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues, and the Claimant shall be afforded 45 days within which to provide the specified information.

(Jt. Appx., D16-D17).  The processes for the handling of appeals of Adverse Benefit Determinations is set forth in Article 5.1.5(a)(ii) and (b).  Under those sections, the plan is required to, *inter alia*, provide the claimant: (1) with "the opportunity

to submit written comments, documents, records and other information relating to the claim for benefits"; (2) with "reasonable access to and copies of all documents, records, and other information relevant to [his/her] claim for benefits" "upon request and free of charge"; (3) "a review that takes into account all comments, documents, records and other information submitted by the Claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination."  Further, the claimant is also to be provided: (1) "180 days following receipt of an Adverse Benefit Determination within which to appeal the determination"; (2) "a review that does not afford deference to the initial Adverse Benefit Determination and that is conducted by the individual who shall from time to time serve as the Appeals Administrator who is neither the Claims Administrator nor the subordinate of the Claims Administrator; and (3) the identity "of medical or vocational experts whose advice was obtained on behalf of the Plan in connection with [the Claimant's] ... Adverse Benefit Determination, without regard to whether the advice was relied upon in making the benefit determination".

Finally, "in deciding an appeal of any Adverse Benefit Determination that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is experimental,

investigational, or not medically necessary or appropriate, the
Appeals Administrator shall consult with a Health Care
Professional who has appropriate training and experience in the
field of medicine involved in the medical judgment" and "who is
neither an individual who was consulted in connection with the
Adverse Benefit Determination that is the subject of the appeal,
nor the subordinate of ... such individual." §5.1.5(b)(iii), (v).
(Jt. Appx. D19).

Mr. Hemmert was first adjudicated to be disabled from his
work at Rohm and Haas as a result of injuries suffered in an
automobile accident by the Social Security Administration on May
5, 2003.  He was found to be totally disabled and entitled to
disability insurance benefits under Sections 216(i) and 223 of
the Social Security Act as of October 21, 2001, the date of his
accident. (Jt. Appx. D1491-1508).  It appears that Mr. Hemmert
applied for DRA benefits within a month or so of this
determination[8] and despite the opinion of Dr. Jeffrey Erinoff[9]

---

[8]   It should be noted that throughout the time periods relevant here,
Liberty Mutual Assurance Company of Boston was the claims administrator for
the Plan and was thus charged with making the initial determinations for
eligibility for STD and LTD benefits, obtaining proof from Plan participants
of ongoing disability and making the initial determinations of whether to
terminate disability benefits for failure to provide proof of ongoing
disability.  Liberty Mutual is not paid by either of the defendants here on
the basis of how it decides disability claims nor paid any incentives or
bonuses for denying or terminating disability benefit claims. (Cynthia Mazer
Affidavit at ¶s2-3).

[9]   Dr. Erinoff was the Rohm and Haas Medical Director for the Delaware
Valley Health Services Department until 2008 when he was terminated as part of
a company-wide reduction in force.  (Defendant's Memorandum of Law in Support
of Motion for Summary Judgment at pp. 4-5, fn. 5).

that it was "highly unlikely he will ever be able to return to work," his claim for DRA was denied as premature, although his LTD benefits were continued with the representation that the matter would be followed-up and presumably re-reviewed in 6-12 months. (Jt. Appx. D1468-D1479). This decision was apparently rendered by Dr. Eileen Bonner, the Rohm and Haas Corporate Medical Director after consultation with Dr. Erinoff and subsequently upheld by Dr. Bonner in or around May, 2004. (Jt. Appx. D1397-1405). It should be noted that Rohm and Haas continued to accept that Mr. Hemmert was totally disabled from working at that time despite the opinions of Gladys S. Fenichel, M.D., a board certified psychiatrist and Wilhelmina C. Korevaar, M.D., a board certified Anesthesiologist and a pain management specialist both of whom were working for IMX Medical Management Services. These two doctors conducted independent medical examinations of Mr. Hemmert on March 9, 2004 and both opined that Mr. Hemmert was "fully capable of full-time gainful employment in any capacity he was able to enjoy before the motor vehicle accident of October 2001." (Jt. Appx. D1418-1442).

In contrast to the opinions of Drs. Fenichel and Korevaar, the record is replete with reports from Mr. Hemmert's treating neuropsychiatrist, orthopedic surgeon, and primary care physician which reflect ongoing treatment and support a finding of permanent and total disability during this time period (2002-

2004). (Jt. Appx. D1401-1403, 1448-1487). There is, however, a dearth of medical records between 2005 and 2006 and apparently, on several occasions between 2005 and 2007, Rohm and Haas, acting through its Claims Administrator Liberty Mutual, did terminate the plaintiff's LTD benefits only to subsequently reinstate them upon receipt of appropriate medical documentation. (Jt. Appx. D1268-1277; D1375-1395). However, it also appears that Mr. Hemmert moved from Pennsylvania to Delaware sometime in this period and that he also was having difficulty obtaining new doctors, as several of his providers no longer accepted his insurance and one of his mental health providers had died. (Jt. Appx. 1381-1390, 1396).

This pattern continued through 2007, with Liberty Mutual requesting that the plaintiff submit updated medical information and when it wasn't immediately forthcoming, terminating his LTD benefits only to reinstate them upon receipt of the requested documentation. (Jt. Appx. D1370-1389). Indeed, there is record evidence that the plaintiff's benefits were terminated on December 19, 2006 (reinstated January 15, 2007) and on March 20, 2007. Subsequent to the March 20, 2007 suspension, the plaintiff evidently failed to contact the defendants until October, 2007 and although his benefits were reinstated through July 9, 2007, they were finally terminated as of July 10, 2007 on the grounds that "Dr. Bonner and Dr. Erinoff did not find medical information

or documentation adequate to support the need for continued benefits under the Disability Program beginning July 10, 2007." (Jt. Appx. D1253).

Were there no additional records or documents in this record, we would be constrained to agree with the defendants' decision given that the plan clearly requires that the plan participant be in active medical treatment and that he submit evidence of ongoing disability upon request.  Here, however, there are additional records that evince that between July and January, 2008, Mr. Hemmert *was* receiving both treatment for his right shoulder disability and his apparently-ongoing depression and related mental health issues.  (Jt. Appx. D1217-1250). Although it does appear that the defendants referred this case to an outside consulting orthopedic surgeon and neuropsychologist who did a paper review of the existing records, it appears that the orthopedic surgeon did not render an opinion on the plaintiff's current disability status and that the neuropsychologist's review was similarly inconclusive in that she noted that "[u]pdated clinical information is necessary for support of psychiatric impairments, restrictions and limitations beyond 7/9/07. ...I will contact [plaintiff's treating psychiatrist] ... to obtain updated information regarding the claimant's clinical status.  I will provide an updated review upon completion of that consultation..." and "I would be happy to

23

review any additional medical records that become available regarding this claimant's psychiatric status." (Jt. Appx. D1255-1264).

Here there is no evidence that this contact ever took place. In light of this and given that the record contains a letter dated January 23, 2008 from plaintiff's then-treating psychiatrist stating his opinion that Mr. Hemmert's "previously ascribed disability is appropriate," we conclude that the refusal to consider these subsequent records was an abuse of discretion and that the decision to terminate this plaintiff's LTD is not supported by sufficient evidence. (Jt. Appx. D1217). See Also, Wernicki-Stevens v. Reliance Standard Life Insurance Co., 641 F. Supp. 2d 418, 427, n.13 (E.D. Pa. 2009), citing Lasser v. Reliance Standard Life Ins. Co., 344 F.3d 381, 391 (3d Cir. 2003)("while the burden of proving disability ultimately lies with Plaintiff 'once a claimant makes a *prima facie* showing of disability through physicians' reports, if the insurer wishes to call into question the scientific basis of those reports..., then the burden will lie with the insurer to support the basis of its objection.'") However, because we find the administrative record inadequate to permit this Court to assess Plaintiff Hemmert's current disability status (*i.e.* subsequent to 2008) and/or his possible current entitlement to the DRA benefit (with the SSDI offset), we shall remand this matter to the claim administrator

so that it may consider these issues.  Thus, we shall grant the Plaintiff's motion for summary judgment in this regard and deny the defendants' summary judgment motion insofar as it seeks to enter judgment in its favor and against Mr. Hemmert on the LTD claim.

An order follows.